# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  46349-1-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| ERIK KEITH BOSCOVICH, | |
| Appellant. | |

BJORGEN, C.J. — A jury returned a verdict finding Erik Keith Boscovich guilty of

unlawful possession of a controlled substance—methamphetamine.  Boscovich appeals his

conviction, asserting that (1) the prosecutor committed multiple instances of misconduct during

closing arguments, (2) the cumulative effect of the prosecutor's misconduct requires reversal of

his conviction, and (3) the trial court erred by admitting evidence absent sufficient proof of an

unbroken chain of custody.  We affirm.

## FACTS

On April 2, 2013, Westport Police Officer Nathan Saunders arrested Boscovich on an

active misdemeanor warrant.  Saunders searched Boscovich incident to his arrest and found a

glass pipe in Boscovich's front pants pocket.  After Saunders transported Boscovich to the police

station and read him his *Miranda*[1] rights, Boscovich consented to a search of his backpack.

Inside the backpack, Saunders found a plastic baggie containing a crystal substance. According

to Saunders, when asked about the nature of the substance, Boscovich told him that "it was

crystal like substances that he was storing in the baggie in his backpack and that if he stored

them long enough they would grow and he could hold them up to the light and see pretty colors."

Report of Proceedings (RP) at 46. Saunders weighed the substance and found that it weighed

23.24 grams, including the weight of the packaging. According to Saunders, Boscovich

repeatedly asked him if he could use his discretion to throw away the substance and not arrest

him for possessing it.

On April 3, 2013, the State charged Boscovich with unlawful possession of a controlled

substance. The State called two witnesses at trial, Saunders and Donna Wilson, a forensic

scientist at the Washington State Patrol Crime Laboratory. Wilson testified that the substance

seized from Boscovich contained methamphetamine and that the weight of the substance without

the packaging was 22.2 grams. Wilson also testified on cross-examination that her chain of

custody report showed that, in addition to Saunders, the individuals handling the evidence

included:

> two property evidence custodians in Tacoma, it was then shipped . . . via UPS to
> the Seattle lab and from that point there were two other property evidence
> custodians who touched the evidence before I received it.

RP at 36-37. Wilson stated that Saunders's weight of the substance at 23.24 grams was not

surprising, "especially if he weighed it with the outer package bag." RP at 32. She also stated

that it did not appear to her that the evidence packaging had been tampered with.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Saunders testified consistently with the facts as stated above. Additionally, Saunders testified that he had placed the suspected methamphetamine into evidence, labeled the evidence with his name, date, and case number, and that the evidence appeared to be in the same condition as when he had seized it from Boscovich. The trial court admitted as evidence the suspected methamphetamine over Boscovich's chain of custody objection.

Boscovich was the only witness for the defense. Boscovich testified that, prior to his arrest, he had been at a friend's party and left with a backpack that resembled his backpack but actually belonged to his friend. Boscovich admitted that the glass pipe found in his pocket belonged to him and that he had asked Saunders to dispose of the suspected methamphetamine. However, Boscovich denied that he had knowingly possessed the methamphetamine and denied that he had told Saunders that the substance was used for viewing light passing through it.

The prosecutor stated the following during closing argument:

> One more thing about the crime lab is that [defense counsel] brought up the fact that it weighed at the lab, 22.2 grams, and that was not in the packaging material. The officer weighed it, I think it was 23.24 grams. Ms. Wilson said she didn't—given that it was weighed in packaging and—and not in packaging, she did not consider that a significant difference. *I'm sure the scales at the Washington State Patrol Crime Lab are a little higher tech than the ones at the Westport—*

RP at 82 (emphasis added). Defense counsel objected based on facts not in evidence, and the trial court cautioned the prosecutor to "[s]tay within the evidence." RP at 82. The prosecutor concluded his closing argument by stating:

> I would submit to you, Ladies and Gentlemen, that *you cannot have a reasonable doubt* that Mr. Boscovich, given all of the evidence, given the testimony, given the bias and interest of the parties involved, *you cannot have a reasonable doubt that Mr. Boscovich is guilty of possession of methamphetamine* and I would ask you to find him so. Thank you.

RP at 84 (emphasis added).  Defense counsel did not object to these statements.  Finally, during

rebuttal closing argument, the prosecutor stated:

> When . . . the officer testified, well, when I asked Mr. Boscovich, you know, what this was; well, these are crystals and they stick together and I hold it up and I can see—I can see light through them.  I mean, Ladies and Gentlemen, you can't make this stuff up.  If the officer was going to, he would do a better job than that.

RP at 95.

Defense counsel did not object to these statements.  The jury returned a verdict finding

Boscovich guilty of unlawful possession of a controlled substance.  Boscovich appeals his

conviction.

## ANALYSIS

### I. PROSECUTORIAL MISCONDUCT

Boscovich first contends that the prosecutor committed multiple instances of misconduct

during closing argument.  We disagree.

A defendant claiming prosecutorial misconduct must show both improper conduct and

resulting prejudice.  *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009).  Prejudice exists

when there is a substantial likelihood that the misconduct affected the verdict.  *State v.*

*McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006).  If a defendant fails to object to the

prosecutor's allegedly improper conduct at trial, the defendant waives a claim of prosecutorial

misconduct on appeal unless the conduct was "so flagrant and ill-intentioned" that it caused an

"enduring and resulting prejudice" incurable by a jury instruction.  *State v. Stenson*, 132 Wn.2d

668, 719, 940 P.2d 1239 (1997).  When determining whether prosecutorial misconduct warrants

reversal, we consider its prejudicial nature and cumulative effect.  *State v. Boehning*, 127 Wn.

App. 511, 518, 111 P.3d 899 (2005).  We review a prosecutor's remarks during closing argument

in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

A.      Improper Vouching/Witness Credibility

Boscovich first asserts that the prosecutor committed misconduct during closing argument by expressing a personal opinion about Saunders's credibility and the reliability of the crime lab scales. On both points, we disagree.

A prosecutor's expressions of personal opinion about the defendant's guilt or witness credibility are improper. *Dhaliwal*, 150 Wn.2d at 577-78. To determine whether the prosecutor has improperly expressed a personal opinion, we view the challenged comments in context. *McKenzie*, 157 Wn.2d at 53.

> "It is not uncommon for statements to be made in final arguments which, standing alone, sound like an expression of personal opinion. However, when judged in the light of the total argument, the issues in the case, the evidence discussed during the argument, and the court's instructions, it is usually apparent that counsel is trying to convince the jury of certain ultimate facts and conclusions to be drawn from the evidence. Prejudicial error does not occur until such time as it is *clear and unmistakable that counsel is not arguing an inference from the evidence, but is expressing a personal opinion.*"

*McKenzie*, 157 Wn.2d at 53-54 (alteration in original) (quoting *State v. Papadopoulos*, 34 Wn. App. 397, 400, 662 P.2d 59 (1983)).

Boscovich argues that the prosecutor's statement that "you can't make this stuff up. If the officer was going to, he would do a better job than that," expressed an improper personal opinion of Saunders's credibility. RP at 95. However, when read in context, it is clear that the prosecutor was not expressing any personal opinion regarding Saunders's credibility. Instead, the prosecutor was merely arguing that, based on the fantastical nature of the statement Saunders had attributed to Boscovich regarding the purpose of the crystal substance found in Boscovich's

5

backpack, the jury should find credible the officer's testimony that Boscovich had made the statement. This is not an improper argument because a prosecutor is permitted to comment on the credibility of witnesses, so long as the prosecutor does not express a personal opinion in doing so. *State v. Neidigh*, 78 Wn. App. 71, 74, 895 P.2d 423 (1995); *see also State v. Copeland*, 130 Wn.2d 244, 290, 922 P.2d 1304 (1996) (It is not improper for a prosecutor to argue inferences from the evidence at trial, including why the jury should believe one witness over another.). Accordingly, Boscovich fails to demonstrate any misconduct on this ground, let alone that the misconduct was so flagrant and ill-intentioned that an instruction could not have cured any resulting prejudice.

Boscovich also argues that the prosecutor's statement, "I'm sure the scales at the Washington State Patrol Crime Lab are a little higher tech than the ones at the Westport [police station]," improperly vouched for the reliability of the Washington State Patrol Crime Laboratory scales. RP at 82. Assuming for the sake of argument that the prosecutor's statement was improper, Boscovich fails to demonstrate any resulting prejudice. Boscovich objected to the statement at trial based on facts not in evidence, and the trial court cautioned the prosecutor to stay within the evidence. The jury was instructed that (1) it was their duty "to decide the facts in this case based upon the evidence presented . . . during this trial," (2) it was not to consider evidence that was "not admitted or was stricken from the record," and (3) "the lawyers' statements are not evidence." Clerk's Papers at 30-31. In light of the brief nature of the prosecutor's statement, the trial court's response to Boscovich's objection, and the jury instructions, which instructions we presume the jury follows, we cannot conclude that the prosecutor's challenged statement had a substantial likelihood of affecting the jury's verdict of

6

guilt. *State v. Foster*, 135 Wn.2d 441, 472, 957 P.2d 712 (1998). Accordingly, we hold that Boscovich has failed to show any prejudice flowing from the prosecutor's allegedly improper statement and, thus, he cannot demonstrate prosecutorial misconduct on this ground.

B.      Burden Shifting/Misstatement of Law

Next, Boscovich asserts that the prosecutor committed misconduct during closing argument by misstating its burden of proof. Again, we disagree.

"Arguments by the prosecution that shift or misstate the State's burden to prove the defendant's guilt beyond a reasonable doubt constitute misconduct." *State v. Lindsay*, 180 Wn.2d 423, 434, 326 P.3d 125 (2014). Although it is improper for a prosecutor to misstate the burden of proof, a prosecutor has wide latitude to argue reasonable inferences from the evidence. *State v. Thorgerson*, 172 Wn.2d 438, 453, 258 P.3d 43 (2011). An argument "[u]rging the jury to render a just verdict that is supported by evidence is not misconduct." *State v. Curtiss*, 161 Wn. App. 673, 701, 250 P.3d 496 (2011).

Boscovich argues that the prosecutor's statement, "you cannot have a reasonable doubt," misstated the law and relieved the State of its burden of proof. RP at 84. Although we agree that, when read in isolation, this statement appears to misstate the law and the State's burden of proof, it is clear from the context of the prosecutor's closing argument that the prosecutor was merely arguing that the State had met its burden of proof based on the evidence at trial. Immediately preceding the statement at issue, the prosecutor relayed the proper standard regarding the State's burden of proof, stating:

> The State has the burden of proving each element of the crime beyond a reasonable doubt. A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly and carefully considering all of the

evidence or lack of evidence. If from such consideration you have [an] abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

RP at 83-84. The prosecutor then stated:

I would submit to you, Ladies and Gentlemen, that *you cannot have a reasonable doubt* that Mr. Boscovich, given all of the evidence, given the testimony, given the bias and interest of the parties involved, *you cannot have a reasonable doubt that Mr. Boscovich is guilty of possession of methamphetamine* and I would ask you to find him so. Thank you.

RP at 84 (emphasis added).

Read in context, the prosecutor merely submitted to the jury that it could not "have a reasonable doubt" of Boscovich's guilt "given all of the evidence, given the testimony, [and] given the bias and interest of the parties involved." RP at 84. Because it is not improper for a prosecutor to argue that the State had met its burden of proving the defendant's guilt beyond a reasonable doubt based on the evidence presented at trial, Boscovich fails to demonstrate any misconduct on this ground, let alone that such misconduct was so flagrant and ill-intentioned and a jury instruction could not have cured any resulting prejudice. *Curtiss*, 161 Wn. App. at 701. Having determined that Boscovich has failed to demonstrate any instance of prosecutorial misconduct, we need not address whether the cumulative effect of such misconduct would require reversal of his conviction.

## II. CHAIN OF CUSTODY

Next, Boscovich contends that the trial court erred by admitting evidence of the suspected methamphetamine, because the State failed to establish an unbroken chain of custody. Again, we disagree.

"Before a physical object connected with the commission of a crime may properly be admitted into evidence, it must be satisfactorily identified and shown to be in substantially the

same condition as when the crime was committed." *State v. Campbell*, 103 Wn.2d 1, 21, 691 P.2d 929 (1984). When the evidence is susceptible to alteration by tampering or contamination, the proponent of the evidence must "establish a chain of custody 'with sufficient completeness to render it improbable that the original item has either been exchanged with another or been contaminated or tampered with.'" *State v. Roche*, 114 Wn. App. 424, 436, 59 P.3d 682 (2002) (emphasis omitted) (quoting *United States v. Cardenas*, 864 F.2d 1528, 1531 (10th Cir. 1989)).

In assessing the completeness of the chain of custody, the trial court shall consider "'the nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of intermeddlers tampering with it.'" *Campbell*, 103 Wn.2d at 21 (quoting *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960)). Minor discrepancies in the chain of custody affect the weight of the evidence, not its admissibility. *Campbell*, 103 Wn.2d at 21; *Roche*, 114 Wn. App. at 436. We review a trial court's ruling on chain of custody for an abuse of discretion. *Campbell*, 103 Wn.2d at 21.

Saunders testified that the suspected methamphetamine was in the same condition as when he had seized it from Boscovich. Additionally, Wilson testified that it did not appear to her that the evidence packaging had been tampered with. Contrary to Boscovich's assertion, the difference in the weights of the suspected methamphetamine taken at the police station and at the crime lab was not a major discrepancy affecting the admissibility of the suspected methamphetamine. As the trial testimony revealed, Saunders had weighed the suspected methamphetamine with its packaging, while Wilson did not. In light of this combined evidence, we cannot conclude that the trial court abused its discretion in admitting the suspected

No. 46349-1-II

methamphetamine as an exhibit at trial.  Accordingly, we affirm Boscovich's unlawful possession of a controlled substance conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, C.J.

BJORGEN, C.J.

We concur:

WORSWICK, J.

WORSWICK, J.

LEE, J.

LEE, J.